IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAMES SIZER, SR., Deceased, by and through heirs DOROTHY SIZER, CAROLINE WOLFF, and JAMES SIZER JR., Individually,<br>    Plaintiffs<br>vs.<br><br>OFFICERS MARTHA CAMERON and S. REALE, Individually and CITY OF AUSTIN, TEXAS,<br>    Defendants, | §§§§§§§§§§§   CAUSE NO. A-15-CV-1143 SS |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**
**AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** JAMES SIZER SR., Deceased, by and through his heirs at law, Dorothy Sizer, Caroline Wolff and James Sizer Jr.. JAMES SIZER SR. was sixty two (62) years of age at the time he was tased and died based solely on Defendants' actions, including the unnecessary and unreasonable use of force by Austin Police Officers Martha Cameron and Salvatore Reale. Plaintiffs file this cause of action complaining about excessive force actions of Defendants Martha Cameron and Salvatore Reale. Plaintiffs also complain about the City of Austin's failures to discipline, supervise, terminate, properly train, provide adequate policies, practices and procedures and require officer compliance with existing policies practices and procedures and for other causes of action as will be shown in the following:

1

**PARTIES AND SERVICE**

1. Plaintiff Dorothy Sizer was the wife of James Fred Sizer Sr. at the time of his death. Caroline Wolff and James Sizer Jr. are Sizer Sr.'s biological children. James Sizer Sr. served twenty years (20) in the United States Air Force from 1973-1993. He was honorably retired after being stationed at various military bases around the United States and in Germany. Although he endured a complete hip replacement and had severe limitations in his lower bodily movements, he was continuously employed at most times through the date of his death. Plaintiff Sizer Sr. was 5 foot 7 inch tall, gray hair with no known criminal history, mental instabilities or illnesses. All Plaintiffs are United States Citizens.

2. Defendants Martha Cameron and Salvatore Reale, both being sued individually, are Austin Police officers and have appeared in this case. The City of Austin Texas is a municipality and has appeared in this case.

**JURISDICTION**

3. The action arises under 28 U.S.C. Section 1331 and 1443 and statutory provisions as hereinafter more fully appears.

4. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

**NATURE OF ACTION**

5. This is an action under Title 42 U.S.C. Section 1983. as amended by the Civil Rights Act of 1991 and the Fourteenth Amendment to correct unlawful and unconstitutional practices and policies. Plaintiffs also sue under the Texas Constitution, Texas Wrongful Death

Statute and Texas Survivors Statutes.

## FACTS

6.      On March 6, 2015, after approx 2:00 pm, on a bright and sunny day, James Sizer Sr. called the Austin Police dispatcher and requested police officers be sent to his home. Plaintiff expressed his belief that his son should not be allowed to carry a gun and expressed concerns that his son was intending to bring his firearm **inside** the Sizer house.  Sizer Sr. reported telling his son that he, Sizer Sr., would not be allow to bring his handgun **inside** the residence. Sizer Sr. told dispatch that he had his own weapon and would defend his home if his son forced entry into his home.  After receiving no response to his request for assistance, Sizer Sr. called back to the police operator and again asked that police be sent to his home and fired three shots into his back yard while telling the operator that he had shot his gun in the back yard. Sizer Sr. returned into his home and placed his gun inside the bed cabinet where he routinely stored his gun.  He then walked into his front drive way and had an additional telephonic call with the Austin Police wherein he expressed his concerns about them not responding to his earlier calls for assistance.

7.      Officers Cameron and Reale drove to Bittern Hollow Dr., Austin, Travis County, Texas at 3:12 pm, in two separate APD marked vehicles.  Defendant Reale observed Sizer standing on his concrete driveway outside his house talking to the police operator with his telephone in his right hand. Reale approached Sizer, having his firearm pointed towards Sizer and began telling him to "get down" and "get on the ground".  At all times relevant to this incident, Reale could and did observe both Plaintiff's hands and knew that Plaintiff's left hand

was empty and Plaintiff possessed a telephone in his right hand. Plaintiffs hands were both up above his waist area and clearly visible.  Plaintiff was barefoot, wearing a tee shirt and black trousers and continuously advised Reale that he was talking to 911 operator. Sizer Sr. continuously stood in the same place during the entire visit of the officers and his entire body remained clearly visible to both Defendant officers. Sizer did not attempt to enter his residence, resist the officers, avoid the officers, escape, elude, struggle or move in any direction.  He did not move his arms, hands, feet or any part of his body after the officers' arrival. Plaintiff responded to Officer Reale's directions to "get on the ground" by telling him that "I can't"; "I'm physically disabled" and "If I go on the ground, I will not get up" Reale acknowledged by saying "OK, OK" to Plaintiff.  Plaintiff never refused to comply with Reale and never ignored his commands but continuously replied directly to Reale that he was "physically unable to get down" and that "he was disabled".  Reale also immediately realized that Plaintiff was under the influence of alcohol as he slurred his speech and words.  Plaintiff was physically unable to "get down" because of physical disabilities, including having had hip replacement medical services which prevented his lowering his body to the ground. Sizer Sr. told Reale that he was currently talking to the 911 operator at the time he was also talking to Reale and asked Reale to "hold on" several times while talking to the operator. Plaintiff continuously faced Reale and never attempted to turn his body, avoid him, move his body away from him and was attentive and immediately responsive to all conversation and directions from Officer Reale.  Reale continued pointing his firearm at Sizer while knowing that Sizer Sr. did not threaten him, verbally abuse him, acknowledged his presence and directions, did not attempt to avoid him, took no actions or

4

hand/body movements which caused Reale to be in fear of Sizer Sr. After responding "OK OK" to Plaintiff, Defendant Reale determined it was reasonable for him to reach out and physically gain physical control of Sizer Sr. by using his hands to grab onto Plaintiff's hands. Reale commanded Officer Cameron, who was approaching Sizer Sr. with her taser in her hands to "Go lethal while I go hands on". Reale had actual knowledge that Plaintiff Sizer Sr. was not, in any way appearing to be violent, threatening or physically resisting and had not demonstrated any intention to be violent or to physically resist their actions or to be a danger to harm the officers, himself or any others.

8. Defendant Cameron did hear portions of the conversations that occurred between Reale and Plaintiff as she approached from the rear with her taser in hand. She called to Plaintiff, "to get down on the ground", and heard Plaintiff explain to her that "I can't". When she asked "Why can't you", Plaintiff spoke directly to Defendant Cameron in a means and manner that his comments were clearly heard and understood by Cameron and said "If I go to the ground, I will not get up". Defendant Cameron did hear Sizer Sr. repeat the same words to Reale and had actual notice that Plaintiff stated that he was disabled. Defendant Cameron did hear the command of Reale to "go lethal" and had actual knowledge that she was being commanded to put away her taser, draw her service weapon and use it to cover Plaintiff. Defendant Cameron consciously and intentionally determined to ignore the commands of Corporal Reale. She yelled "taser, taser, taser," and discharged her taser into the back of Plaintiff. Cameron's saying "taser, taser, taser, was her advising Defendant Reale that she was preparing to deploy her taser and allowed him to respond "OK" and move to his left so as to be outside the range of the taser

5

prongs. Cameron discharged his taser within approximately 17 seconds of her arrival and admits that she heard Plaintiff and Reale discussing that Plaintiff was physically unable to get to the ground. Plaintiff Sizer Sr. took no action or movements that would have caused fear for the safety of Reale, Cameron or any other persons during the entire time both were present. Cameron had no indications or reasonable beliefs that Plaintiff's son was present or had been injured and observed that Plaintiff was unarmed and not taking any actions to evade or harm either officer. Cameron was not in fear for her safety or the safety of Reale or any other person as she holstered her gun, withdrew her taser and approached with intent to deploy her taser. At the moments prior to deploying her taser, Defendant Cameron was without fear of Plaintiff or any belief that he was attempting to escape, elude, struggle or assault officers, take any action to place them in danger or make any furtive bodily movements. Defendants did not ask Plaintiff any questions about a gun or his son prior to tasing him. Plaintiff was not under arrest and had not been advised that he was being detained or investigated at the time Defendant Cameron deployed her taser. Defendant Cameron gave knowledge of her intended actions to Defendant Reale immediately prior to deploying her taser. Defendant Reale acknowledged Cameron's intended actions, verbally approved of her actions and moved in response to Cameron's comments to him so that he was not in the direct line of the taser. Reale had advanced actual knowledge that it was Defendant Cameron's intent to use her taser on Sizer even though seconds earlier, he was preparing to "go hands on" and physically grab Plaintiff's hands as a means to detain/restrain him. Defendant Reale did not attempt to stop Cameron and did not warn Plaintiff that he was about to be tased. Defendant Reale knew that Plaintiff did not pose a threat to the

safety of either officer or others, that he was not resisting or attempting to evade, threaten or purposely disobey officers and that additional officers were arriving and only seconds away.

9. Defendant Cameron deployed her taser into Plaintiff's back causing him to immediately loose control of his body and fall backwards. Plaintiff fell onto his back with the back of his head striking the concrete driveway which opened up a large laceration at the rear of Plaintiff's head. Blood immediately began to flow from the opened head wound as Plaintiff lay on the pavement, unable to move or control his body. Defendants placed Plaintiff in handcuffs and immediately began to interrogate him, as he lay bleeding, moaning and in severe pain.

10. Defendants had actual knowledge that tasing Plaintiff as he stood on the slanting concrete pavement would certainly result in collateral injury to Plaintiff. Both Defendants had knowledge and belief that Plaintiff was under the influence of alcohol. At the time Defendant Cameron used her taser on Plaintiff, she was not certified or qualified to possess or discharge a taser. Cameron had failed and refused to be certified since 2008 and knew that taser users were required by taser requirement rules and APD policy to be re certified annually. Defendant Reale was also in possession of a taser and had actual knowledge that he was not re certified to use or possess a taser at this time in that he has not be re certified in approximately five years. Defendant Reale was Cameron's supervising officer and intentionally allowed Cameron and himself to patrol and use tasers at times when he know that both were not properly certified to carry and use tasers and should not have been in possession of their tasers. After EMS arrived, Plaintiff was transported to North Austin Medical Center against his wishes. Plaintiff advised APD that he did not want them to transport him to North Austin Medical Center. After being

maintained in police custody in the Hospital, Plaintiff was booked into the Travis County Jail with a charge of Discharge of a Firearm, a misdemeanor criminal law violation. Plaintiff was released from jail after posting a bond and returned to his home and family without any medical documents, papers or instructions relating to his medical treatments or conditions. Defendants had actual knowledge that Plaintiff was intoxicated at the times he was arrested, taken to the hospital and in their custody.

11. On March 14, 2015, Plaintiff Dorothy Sizer returned home and found Plaintiff James Sizer Sr. on the floor, next to their bathtub, deceased. An autopsy was completed and describes the **sole** cause of the death of James Sizer Sr. to be **"COMPLICATIONS OF BLUNT FORCE HEAD TRAUMA"** The medical doctors and Death Certificate also describes how the injury occurred as **"FELL BACK AND HIT HEAD AFTER HIT WITH AN ELECTRICAL CONDUCTING DEVICE".**

12. Defendants Cameron and Reale are the only individuals who caused an "electrical conducting device" to strike Plaintiff Sizer Sr.. Plaintiff was not struck, injured or assaulted by any individuals or entity other than Defendants. Plaintiff was not shocked or had any contact with electricity other than that caused by Defendants**.** Plaintiff had not fallen, hit his head, caused his body any injury or been injured in any means or manner other than what occurred while in the presence of Defendants, as described herein. Plaintiff had not suffered any blunt trauma to his head or any other part of his body other than what was caused by Defendants, as described herein. Defendants are the sole cause of Plaintiffs injury, assault, being shocked or other trauma. Defendants are the only parties to cause any shock to Plaintiff. Defendants are the

8

sole cause of Plaintiff's death.

## EXCESSIVE FORCE

13.     Defendants Cameron and Reale's actions were intention and done with conscious indifference to the rights, safety and suffering of Plaintiff. Defendants arrived to investigate a disturbance call, a misdemeanor at most, and had actual knowledge that Plaintiff had no access to weapons as they saw both his hands at all times. Defendant had no beliefs that Plaintiff was trying to resist in any way, run away, or escape.  Plaintiff made no furtive actions.  Neither Defendant was in fear of their safety or the safety of others and both had actual knowledge where Plaintiff Sizer Sr. resided.  Defendants knew Plaintiff's sole concerns related to if and only if his son were to arrive at his home and attempt to "made **entry into his home** while carrying a gun". Defendants knew that Plaintiff fired three shots into the ground while talking to the 911 operator and that no additional shots had been fired by Plaintiff.  Defendants also know that Plaintiff's son had not arrived before their arrival and was not present at the time of their arrival or during their presence.  Defendants had no reasonable beliefs that Plaintiff, at 5'7" was fighting or attempting to assault them, evade them or cause either of them any injury. Defendants had no reason to believe that Plaintiff had caused injury to any person prior to their arrival.  Plaintiff immediately and appropriately responded to all communications from Defendant Officers and complied with their directions, as best his body's limitations would allow.  Defendant's actions were the sole cause for Plaintiff Sizer's death and were intentionally for the purpose of violating Plaintiff's rights as assured by the U.S. Constitution and Texas Constitution. Defendants' actions were conscious, indifferent and in Violation of 42 U.S.C.

Section 42.

## BYSTANDER LIABILITY

14. Defendant Reale had actual knowledge that Defendant Cameron was preparing to deploy her taser into the back of Plaintiff and Reale failed to take reasonable measures to stop Defendant Cameron's excessive use of force. Defendant Reale gave his approval, assisted and cooperated with the action of Cameron and failed to protect Plaintiff from illegal and unreasonably excessive actions which he anticipated and saw occurring. Defendant Reale's failures to act were intentional, knowingly, and consciously indifferent to the rights and protection of Plaintiff. He had actual knowledge that Plaintiff could suffer injury and/or death because of the expected actions of Cameron. His actions, as well as those of Cameron were the sole cause of the imminent bodily injury and death of Plaintiff. The actions of all Defendants are the basis for damages to Plaintiff and his heirs and family for which Plaintiffs herein sues. Defendant Reale was Cameron's supervising superior and had a duty to control and command her every action. Defendant Reale told Cameron "OK" as she advised him of her intended actions. Defendant Reale had actual knowledge that Cameron was not re certified annually, per APD policy and taser guidelines, to possess and deploy a taser at the time she tased Plaintiff. Reale had actual knowledge that Cameron should not have been in possession of a taser on the date that she tased Plaintiff.

## NEGLIGENT RETENTION, TRAINING, SUPERVISION AND ABSENCE OF POLICIES, DISCIPLINE AND PROCEDURES

15. Plaintiffs alleges that the conduct of Defendants City of Austin, Cameron and

Reale were consciously indifferent and constituted negligent and non existing training, supervision, discipline, absence of actual policies and procedures and unreasonably dangerous retention policies. Plaintiff alleges that Defendant Art Acevedo, as Chief of Police and the City of Austin, Texas did not properly screen, evaluate, train, investigate, discipline, supervise or take other reasonable steps to determine whether Defendants were unfit, incompetent, or a danger to third parties. Defendant Art Acevedo, as Chief of Police and the City of Austin also failed and continues to refuse to discipline it police officers and has no policies and procedures which prevents them from using unreasonable and unnecessary force. Defendant City's failures to discipline its officers who continue using excessive force encourages officers to use excessive force when the use of such force is not necessary. Defendants officers and other officers at APD lack the required and mandated training and skills to possess and use tasers and other law enforcement equipment but are allowed to continue tasing individuals.  Defendant officers continuously ignore commands and supervisory decisions and allow each officer to determine individual actions which are often times contrary to directions, training, written policies, procedures and commands of their supervising officers and allow uses of excessive force.

16. Defendant City of Austin Police Department's written policies regarding the use of tasers is not the actual policy, practice or procedure used by it officers. Austin's Officers are allowed to tase individuals without concerns about the effects and the location of the individuals and the possibilities of falling and injuring themselves. Officers are allowed to use the taser without concern for how it's use becomes excessive when the "alleged violator" had done nothing wrong or resisted or attempted to escape. Defendants City fails to train Officers to

properly and legally use tasers to enforce the law without violating clearly established rights. Defendants do not teach officers how to resolve alleged concerns by using taser without using excessive force.  Austin Police Department conceals statistics and protects and promote officers who are not taser certified annually, properly trained, known to use tasers excessively and to intentionally punish civilians.  Austin Police Department allows it officers to use excessive force without fear or worry about discipline and such continual excessive uses of force and deadly force has become the norm and practice. Defendant Art Acedevo, as Chief of Police and the City of Austin's failure to exercise reasonable care in the training, supervising, disciplining and retention of Defendants Cameron and Reale as well as its failures to have reasonable practices and policies relating to when the use of tasers becomes excessive force was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.  Defendant officers, as well as other APD officers, continuously fail and refuse to be properly trained but APD ignores its own training policies and rules.  Such failures show, encourage and support Defendant's conscious indifference to officers uses of excessive force and constitutionally abusive actions.

## WRONGFUL DEATH & SURVIVOR'S STATUTES

17. Defendants actions and inactions, as described in this First Amended Complaint, violated Plaintiffs' rights under Texas Wrongful Death and Survivor's Statutes.  Defendants' actions, as described herein, amounted to conscious indifference and Gross Negligence.

## DAMAGES

18. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described herein above:

12

a. Physical pain, injury and death of JAMES SIZER SR..

b. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiffs,

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Inconvenience;

g. Prejudgment interest;

h. Loss of enjoyment of life;

i. Mental anguish in the past;

j. Mental anguish in the future;

k. Loss of earnings in the past;

l. Loss of earning capacity which will, in all probability, be incurred in the future;

m. Loss of benefits;

n. Loss of Consortium in the future including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, and/or physical relations;

o. All Appeal Cost and Expenses;

p. Funeral and burial expenses; and

q. All Medical Expenses

## EXEMPLARY DAMAGES

19.     Plaintiff would further show that the acts and omissions of Defendants Cameron and Reale were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendants, Plaintiff also seeks recovery from Defendants for exemplary damages.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered  against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, as addressed to each Officer Defendant, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

BOBBY R TAYLOR

By: /s/Bobby Taylor
Bobby R. Taylor
Texas Bar No. 19685500
1709 E. Martin L. King Jr. Blvd
Austin, Texas, 78702
Tel. 512-476-4886

Fax. (512)476-2818
Attorney for Plaintiffs

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

## **CERTIFICATE OF SERVICE**

   I, Bobby R. Taylor, Attorney for Plaintiffs, certify that a true and correct copy of Plaintiff's First Amended Complaint was served by fax to Defendants' attorney on this 11st day of November, 2016.

                                                  /s/Bobby Taylor
                                                  Bobby R. Taylor