UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES SIZER, SR., Deceased, by and through heirs, DOROTHY SIZER, CAROLINE WOLFF and JAMES SIZER JR., Individually<br>Plaintiffs,<br><br>vs.<br><br>OFFICERS MARTHA CAMERON and S. REALE, Individually and CITY OF AUSTIN, TEXAS,<br>Defendants. | §§§§§§§§§§§§§ | CIVIL ACTION NO. 1:15-CV-1143 SS |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiffs and files their Motion For Summary Judgment against Defendants Cameron, Reale and City of Austin and shows unto the Court as follows:

**I.**
**FACTS**

1. Plaintiffs' claims arise out of the use of excessive force in tasing James Sizer Sr. by Austin Police Officer Martha Cameron and the intentional failure of Coporal Reale to protect James Sizer Sr. from Cameron's tasing on March 6th, 2015 at approximately 3:15 pm. Plaintiffs also allege deliberate indifference and gross negligence by City of Austin in its failures to discipline, supervise, terminate, properly train, provide adequate policies and be sure they are complied with, provide practices that are actually utilized and control its police officers. Plaintiffs argue City's written policies are not practiced and are ignored such that officers' daily practices become the policies of the Austin Police Department, even when they violate individual's civil rights.

2. All the incidents occurred at 11936 Bittern Hollow Dr., Austin, Texas and most of the

1

incident was captured on two police auto dash cam videos. Plaintiffs, James Sizer Sr. (Deceased) and Dorothy Sizer, resided on Bittern Hollow Dr.. On March 6th, Sizer Sr. was home alone and drinking alcohol. Around 2:30 pm, Sizer Sr. called 311 and requested police assistance. (**Exhibit 1, COA 1013**) When asked why police were needed, Sizer Sr. stated that his call was not an emergency but he wanted an officer sent to his residence to discuss concerns about his son having a license to carry a gun and attempting to enter into Sizer's residence. Sizer Sr. stated "**I'm not threatening to shoot him**" but "I'm was fully armed and ready for anything". The first call ended but when officers didn't arrive as expected, Sizer Sr. made a second call to police and expressed his dissatisfactions with the police Department and their failure to arrive at his home. He advised the operator that he had just shot three bullets into his back yard and asked if his call was being recorded. The operator advised that all calls were recorded and advised that officers were arriving at his residence. (**Exhibit 2, COA 1015**). Sizer had earlier returned his gun to where he stored it and walked outside and stood on his concrete driveway. He had nothing in one hand and held his telephone in his other hand while continuing to talk to the Austin police dispatcher. Dash cam videos, (**Exhibit 3, Reale video -COA 1 and Exhibit 4, Cameron video- COA 2**), captured everything that occurred from the moment Defendant officers arrived and Plaintiff was outside**.**

3. **Defendant Coporal Reale** arrived at Plaintiff's residence just prior to Defendant Cameron. **Exhibit 3, COA 1** captures Reale's interactions and conversations with Sizer Sr.. Reale realized that Plaintiff was standing on his driveway and immediately approached with his firearm pointed at Sizer. Reale observed and knew that Plaintiff's left hand was empty and he possessed a telephone in his right hand. Reale began telling Plaintiff to "get down" and "get on the ground" as he walked towards him. Plaintiff was barefoot, wearing a tee shirt and black pants and told Reale that he was

2

currently talking to the 911 operator as Reale was approaching him. Sizer Sr. remained standing in the same spot during the entire visit of the two officers and his entire body remained clearly visible to Defendants. Sizer Sr. did not attempt to enter his residence, resist the officers, attempt to escape, assault, injure, threaten, elude or struggle with the officers in any manner or means. He did not move his arms, hands, feet or any part of his body in any means to cause the officers to fear him and never turned his back or stopped facing Defendant Reale. Plaintiff immediately responded to Reale's directions to "get on the ground" by saying "I can't". He stopped his conversation with Reale at one time to advise Reale that he was still talking to 911 and asked Reale to "hold on". He then spoke back to Reale by saying "I'm physically disabled" and "if I go to the ground, I will not get up". Reale acknowledged Plaintiff by stating "Ok, Ok" to Plaintiff. Plaintiff never refused to comply with Reale's directions or ignored his commands but continuously and clearly replied that he was "physically unable to get down" and that "he was disabled". (**See Exhibits 3 & 4**) Plaintiff was physically unable to "get down" because of physical disabilities, including having had hip replacement medical surgery which prevented his lowering his body to the ground. Reale observed Defendant Cameron approaching from Plaintiff's rear and ordered "Martha go lethal, I'll go hands on". (**Exhibit 5 Reale Deposition pages 61-65, 87-90; Exhibits 3 & 4**). Going "hands on" meant controlling both of Sizers hands and taking him down to the ground. (**Exhibit 5 Depo of Reale p. 69-73**). Reale believed he was close enough to be able to get him {Sizer Sr} into cuffs."(**Exhibit 5 p. 78 line 10**). Reale also said "I felt that I could take him down to the ground and go hands on" (**Exhibit 5 Reale Depo. p 85**). After hearing Cameron say "taser, taser, taser", Reale started moving 4-5 steps to his left towards Martha Cameron and away from the direction of the taser. (**Exhibit 5, Reale Depo p. 90**).

3

4. **Defendant Cameron** was the second police vehicle on scene with her actions being shown in **Exhibit 4, COA 2.** Officer Mark Manley, the third police officer, arrived 8-12 seconds after Cameron's arrival. **(Exhibit 6 Depo. of Cameron pages 120-122).** Cameron describes herself coming up from behind Sizer Sr., as shown in both videos, and "I'm also thinking is the son in there, is he injured, is he partially injured, is he gonna come out and retaliate against his dad? Does h-you know-I don't know at that point if there's somebody in the house, if the son's in there" **(Exhibit 7, Cameron Interview with Det. Parks-COA 1206, 1235).** Cameron denies knowing or hearing that Sizer Sr. was disabled even though the video captures everything said by Sizer. (**Exhibit 7, Cameron/ Det. Parks, COA 1240, 1241;Exhibit 8, General Offense Report COA , 0104, 1139; Exhibit 6. Depos of Cameron p. 162 )**. She also denies hearing Coporal Reale say "Martha go lethal and I'll go hands on" **(Exhibit 7 Cameron/Parks Interview p. 1238-1239 and Exhibit 8, Gen. Off Report COA 0104).** Cameron tells Sizer Sr. to get on the ground as she approaches with her taser in hand. Sizer looks at her and clearly states "I can't". Cameron asks "Why can't you" and Plaintiff spoke directly to her in a clear loud voice saying "If I fall on the ground, I will not get up". Cameron observed that Plaintiff had one empty hand and continued holding the telephone in his other hand. Plaintiff did not take any actions to cause any fear or danger to either Defendant and responded to every command and statement from Defendants. At this time, Defendant Reale was preparing to go "hands on" and was almost within touching distance to Sizer Sr.. Defendant Cameron heard Reale's command and had actual knowledge that he intended to reach out and grab Plaintiff by his hands. Defendants were not in fear from Plaintiff as neither officer had asked any questions about Plaintiff's having a firearm or about whether Plaintiff's son was present. Defendants did not ask whether Plaintiff had a gun on his person or in his clothing. Plaintiff never swung, kicked, tried to escape,

4

tried to injure or took any actions which would have put any reasonable officer in fear of his safety or that of another person. As soon as Sizer responded with his statement, Defendant Cameron said "taser, taser, taser". Defendant Reale immediately responded "OK", never thought about telling Defendant Cameron not to discharge her taser, and moved his body several steps to his left to be out of range of the taser prongs. **(Exhibit 5, p 74-75; Exhibits 3 & 4 )**. Defendant Cameron discharged her taser into Plaintiff's back. Plaintiff Sizer Sr. fell to the sidewalk with his head striking the pavement and causing injury to his head **(Exhibit 9, Photo of James Sizer Sr. COA 0075, Exhibit 10, Photo of head injury to Sizer COA0085 and Exhibit 11, Photo of Sizer's blood COA 0087).** As stated in Defendants' First Amended Answer, Defendant Cameron knew Plaintiff would suffer collateral damages by her tasing him. Defendants called EMS who came to the location. Plaintiff refused the request to be transported to the hospital but Defendants arrested him for the Class A Offense of Discharge of Firearm in Certain Municipalities on March 6th, 2015, **(Exhibit 12, Affidavit for Warrant of Arrest. COA 001412)** and had him transported to North Austin Medical Center where he was admitted and treated until released the following day. He was in custody while in the hospital and had Austin Police Officers stationed in his room. Officer Rolando Espinoza spoke to Plaintiff Sizer Sr. and received a complete description of what Sizer did, why he did it and what thoughts were going through his mind when he called APD and why he fired his gun. Espinoza stated "Jim appeared suprised when he was informed that he could not shoot a gun on his property." **(Exhibit 13, Supplemental Report of Espinoza COA 0044)**. Sgt Martina St. Louis also spoke with Sizer while he was in custody in the hospital and wrote "Sizer called 911 and while he spoke with 911, he fired 3 rounds into the ground in his back yard. When I told Sizer he could not do that 'he seemed shocked.' He asked "on my own property?". Sizer also informed St. Louis that he had

5

previously had hip replacement surgery. St. Louis's report also acknowledges that medical staff told her that Sizer was "bleeding from the brain" (**Exhibit 14, Supp Report Of Martha St Louis, COA 0016; Exhibit 15, Depo of St Louis, p. 17-18**). After being discharged, Sizer was immediately transferred to Travis County Jail, with no medical records, directions or instructions, where he remained until released on bond. Plaintiff returned to his home where he remained. Plaintiff Sizer Sr. was never shocked or tased by any other individual other than Cameron and never suffered any injuries other than those caused by these Defendants. On March 14, 2015, Plaintiff Dorothy Sizer returned home and found Plaintiff James Sizer Sr. in their bathroom, on the floor, deceased. An autopsy was completed and described the cause of death of James Sizer Sr. to be "**COMPLICATIONS OF BLUNT FORCE HEAD TRAUMA**". The medical doctors and Death Certificate also describes how the injury occurred as **"FELL BACK AND HIT HEAD AFTER HIT WITH AN ELECTRICAL CONDUCTING DEVICE." (Exhibit 16-Medical Examiner's Report and  Exhibit 17-Certificate of Vital Records-Texas Death Certificate of James Sizer Sr.**

**5**.     Plaintiffs filed their Original Complaint and Jury Demand on December 10, 2015. Plaintiffs sued Defendant Martha Cameron alleging that her tasing James Sizer Sr. was using excessive force and was unreasonable and unnecessary. Plaintiffs sued Defendant Reale because he had actual knowledge that Cameron was about to use excessive force by tasing James Sizer Sr., but failed and refused to take any actions to prevent her using her taser and causing injury which lead to the death of Plaintiff. Plaintiffs sued the City of Austin alleging its failures to discipline, supervise, terminate, properly train, provide adequate policies, practices and procedures was a proximate cause of Plaintiffs injuries and death. Additionally, the City's failures to require officer compliance with

6

existing policies, practices and procedures was also a contributing cause to the officers behavior which was a proximate cause of Plaintiff's injuries and death. Defendants all filed their appearances and pleadings. Plaintiff filed a First Amended Complaint on October 21, 2016. Defendants filed their First Amended Answer. Plaintiffs filed a Second Amended Complaint. The Scheduling Order requires all discovery be completed before February 10, 2017 and all dispositive motions be filed no later than April 3, 2017. Docket call is September 29th at 11:00 am and trial set in the Month of October 2017.

## II

## LEGAL AUTHORITIES

6.	Summary Judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Federal Rules of Civ. Proc. 56(a); Celotex Corp. V. Catrett, 477 U.S. 317, 323-325 (1986)*; *Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007)*. A dispute regarding a material fact is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000)*. A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. V. Zenith Radio, 475 U.S. 574, 587 (1986)*; *Cooper Tire & Rubber Co. V. Farese, 423 F.3d 446, 454 (5th Cir. 2005)*. Although the court reviews evidence in the light most favorable to the nonmoving party, the court assigns greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. *Poole v. City of Shreveport, 691 F.3d 624, 627, 691 (5th Cir. 2012); Carnaby v. City of Houston, 636*

*F.3d 183, 187 (5th Cir. 2011) (quoting Scott v. Harris, 550 U.S. 372, 381 (2007).* The right to be free from excessive force during a seizure is clearly established. *Deville v. Marcantel, 567 F. 3d 156, 169 (5th Cir. 2009); Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)* Excessive force claims are necessarily fact-intensive and depend on the facts and circumstances of each particular case. *Deville, 567 F. 3d at 167 quoting Graham, 490 U.S. at 396.* The Court considers the evidence to determine whether the officers actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Brumfield v. Hollings, 551, F3d 322, 326 (5th Cir. 2008)* . The evaluation of an officer's use of force must be from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham at 396*. Plaintiffs can only succeed if they show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable" *Graham v. Connor, 490 U.S. 386, 396 (1989).* Where, as in this case, there are video recordings of the events in question, the Court should analyze the video evidence and reject any account where the video evidence so strongly discredits that story so that no reasonable jury could believe the other version of the events. *Scott v. Harris at 380.*

### III
### ARGUMENT

7.  The video evidence, Exhibits 3 & 4 , are clear evidence that Defendant officers were not in fear of Plaintiff, James Sizer Sr.. They both walked out into the open and Reale walked directly up to Plaintiff and admits that he was preparing to go "hands on" until Defendant Cameron called out "taser, taser, taser". Cameron had put away her hand gun and removed her taser. She walked up to Plaintiff and admits that she was not in fear of Sizer causing injury to herself or Defendant Reale. When confronted with the earlier reports and statements wherein she denied hearing Reale command

8

her to go lethal, Cameron admitted hearing Reale's words (**Exhibit 18, IA interview with Sgt Masters COA 1477, 1479-1483; Exhibit 6, Depo of Cameron, p. 139-147**). Cameron's reason for immediately tasing Sizer was "to make the scene safe since he was not complying and there had been a shooter/shooting. She did not feel like there was time to continue to try and get the man to comply due to the possibility there was someone injured/shot inside the house who needed immediate medical attention**"(Exhibit 8, Gen Off. Report. COA 0104).** Cameron was on scene approximately 20 seconds before tasing Plaintiff and knew that Officers Manley and Espinosa were 8 to 12 seconds away. (**Exhibit 6, Depo of Cameron p, 120-123, 127, 128, 153).** Cameron describes "the urgency, in my opinion, was the life of the son......my main concern was to get aid to the son that I thought was dying and to ensure that Mr. Sizer wasn't going to shoot the firearm anymore or where it was." (**Exhibit 6 Depo. of Cameron p. 127, 128, 153-154)**. Cameron admits that she was going to tase Sizer on this day even if she had actual knowledge and a belief that he was disabled and physically unable to get down. **(Exhibit 6, Depo of Cameron p 166-168).** She admits that Sizer was not violent or threatening or attempting to escape and she saw no signs of aggression prior to tasing him. She also admits that she had no idea what conversations occurred between Sizer and Reale, but those conversations wouldn't have affected her actions to deploy her taser. (**Exhibit 6, Depo of Cameron . p. 150-153, 154-156; Exhibit 6, Depo of Cameron p. 185 ). C**ameron denied that she was required to follow Reale's commands and instructions and stated that both she and her Coporal instructed each other in what actions to take. (**Exhibit 6, Depo of Cameron, p 157-160)**

8.     Cameron described Subject's {Sizer's} Resistance on COA.0008, of the Offense Report **(Exhibit 8, General Offense Hardcopy COA 0006-0010)**, as "Verbal Resistance/Aggression, Passive Resistance". Where the document requires explanation for use of force as 'reason given',

9

Cameron inserts "Necessary to effect arrest/Detention". Where the document request 'Effects Of Force', Cameron inserts "Serious Injury"to explain the physical effects of her use of force, by tasing Sizer. The document request details of 'Treatment' and Cameron describes "Treated and retained at Hospital". Cameron clearly admits that her actions resulted in Sizer having serious injury and requiring hospitalization. As 'Supervisor information', Cameron lists Martina St. Louis and Defendant Cameron admits everything stated was true and that her supervisor read and approved the information. (**Exhibit 6, Depos of Cameron , p.129-137).** Cameron admitted reading and being aware of APD policies and believed that she was in compliance with **Exhibit 19, APD Police Policy 200**, **, COA 0508-0512)** and agrees that page 0508 describes Serious Bodily Injury, that suffered by Plaintiff as "Bodily Injury that creates a substantial risk of death or that causes death...**(COA 0508**) and also speaks to Duty to Intercede on **COA 0509, Section 200.1.3,** which is the duty Plaintiffs believe Reale violated. (**Exhibit 6, Depo of Cameron p. 194-204)** Defendant Cameron discussed and was well aware and trained to understand **APD Policy 206, Control Devices and Techniques, (Exhibit 20, COA 0513-0517)** and **APD Policy 208, Taser Device Guidelines (Exhibit 21, COA 0518-0523)**. Exhibit 20, at 206.2.1, COA 0513 describes when a control device may be used as "When a decision has been made to control, restrain or arrest a violent, threatening or escaping subject, an approved control device may only be used when its use appears objectively reasonable under the circumstances." Policy 206.2.4(a) reads "Only employees trained and certified in the use of a specific device are authorized to carry and/or use that device." **COA 0514.**

9.      Plaintiffs argue that **Exhibit 21**,Taser Devices Guidelines, alone, proves that Cameron's tasing Sizer was excessive force and not the actions of an objectively reasonable officer in the same or similar situation. Tasing a subject whom you determined to be a passively resistant individual is

contrary to APD *written* policies. It is unreasonable and unnecessary and Defendant officers have no evidence of being or feeling themselves threatened. If there were any threats, signs of aggression or fear shown by any officer or anybody else, they were minimal. If Cameron and Reale were fearing for the son, had he been present in the house, their fears were clearly based upon assumptions of his presence without anything to verify such and based upon unfounded beliefs of a past shooting by Sizer and they knew other officers were immediately available to them. They faced no threats from Sizer and he was talking to the police operator at the very moments Defendant officers were preparing to take control of his bodily movement. It is undisputed that Plaintiff never swung or took any aggressive actions. In *Newman v. Guedry*, *703 F. 3d, 757, 762, (5th Cir. 2012)* the court concluded the officer's use of a taser and nitestick were objectively unreasonable because there was no basis for concluding Newman posed any real or significant threats to the officers, even if he was not fully compliant. Albert Rodriguez, Defendants' expert witness, concluded that where Cameron described Sizer's resistance as 'passive resistance', APD's Policy No. 208.4.2, COA 0519, the words "**prohibited uses of the taser device" means "its not to be used........Period**".(**Exhibit 22, Depo of Albert Rodriguez p. 68-70).** Austin's Interim Police Chief, Manley states that where APD Policy No. 208.4.2 (d) says prohibited use in reference to a taser, "**prohibited use is that is should not be done**". **(Exhibit 23, Depo of Manley p. 33)**. The Fourth Amendment confers to Sizer a right "to be free from excessive force during seizure". *Poole, 691 Fed. 3d at 627.* Plaintiffs believe this case clearly shows (1) an injury which is the tasing and death of Sizer, (2) which resulted directly and only from a use of force that clearly was excessive, and (3) the excessiveness of which was clearly unreasonable. This evidence also shows (1) Plaintiff to be charged with a misdemeanor offense alleging discharge of his weapon within the City limits, an offense mistakenly not known to be a

11

violation of the law to Plaintiff; (2) a suspect who posed no immediate threats to the safety of officers or others and (3) a person not actively resisting arrest or attempting to evade arrest by flight. Plaintiffs argue that any force greater than hand to body contact was unreasonable and unnecessary.

    (A) Chief Manley also denied the existence of any evidence or basis for the City's pleadings alleging an affirmative defense that St. David's North Austin Medical Center or Dr. James Howard Shane III are responsible third parties who are liable to Plaintiff pursuant to Sect 33, Texas Civil Practices and Remedies Code. **(Exhibit 23, Depo of Manley at p. 33-35.)**

10.    **Exhibit 21**, TASER DEVICE GUIDELINES reads at page **COA 519** at 208.4.2: **PROHIBITED USES   The following are prohibited uses of the TASER Device :   (d) Against passively resisting subjects.** Cameron admits describing Sizer Sr. as passive resistance in **Exhibit 8, pg. 0008**. Cameron never asked Sizer whether he was armed and admits that her "mindset at that point was to get aid and help to the son that I thought was dying in his house". (**Exhibit 6, Depo of Cameron, p. 152);** Cameron didn't have the impression that Sizer was violent towards Reale or herself, didn't have any idea Sizer was attempting to escape or being aggressive or showing violence towards anybody, including Reale and herself.  His hands were visible and empty and Reale had walked up to within 10 feet preparing to go hands on**. (Exhibit 6, Depo of Cameron p. 154-156).**

11.    Plaintiff Dorothy Sizer saw or spoke to Plaintiff James Sizer Sr. each day after she picked him up and brought him home from the jail until the day she discovered him dead in the home. Plaintiff Dorothy Sizer visited and observed Sizer Sr. and knows that he received no blunt force strikes or injuries to his head after he was released from the jail and did not receive any type of hit and/or shock from any electrical conducting device once he was returned to his home. (**Exhibit 24, Depos of Dorothy Sizer p. 118-138)**; Dorothy Sizer testifies, through the attached affidavit, that

12

Plaintiff Sizer had no medical records, documents or materials relating to his medical care and expected procedures for future care upon his release from the Travis County Jail. Additionally, Dorothy Sizer was personally talking to and/or visiting and being with James Sizer Sr. every day after he was released from jail until the day he was found deceased in their home and she had personal knowledge and belief that he was not in the presence of any individuals who possessed any device capable of providing an electrical shock, . She also provides testimony that James Sizer Sr did not receive or suffer from a blunt force to his head during the days after his release from the jail. (**Exhibit 25**, **Affidavit from Dorothy Sizer**)

12.     Defendant Reale violated his duty to supervise Cameron as well as his obligation to intercede to protect Plaintiff. He admits observing Cameron immediately prior to her tasing Sizer and moving to avoid himself being injured. He also admits saying nothing to her to prevent the tasing. (**Exhibit 5, Depo of Reale p. 89-91).** APD Policy 208.1, COA 518-0519, Purpose and Scope, says that The Taser is intended to control " a violent or potentially violent individual" and speaks to "personnel who have completed department approved training having tasers at Section 208.1.1.. Reale had actual knowledge that Policy 208.4.1 (a), (b) © and (d) , COA 0519, did not describe or relate to Plaintiff. Plaintiff was not fleeing, physically resisting, making officers feel unsafe to approach or demonstrating an intention to be violent or to physically resist and who reasonably appeared to present the potential to harm officers, himself, or others. Reale agreed that Plaintiff was, at most, showing "passive resistance".(**Exhibit 21,Taser Device Guidelines COA 518-519**) **Exhibit 19, Policy 200, at 200.1.3, COA 0509** speaks to the **Duty To Intercede** which was violated by Defendant Reale. The City of Austin trains officers to understand their obligations to stop other officers from using excessive force. (**Exhibit 26, Duty to Stop Others Training**

**Document -COA 002494**), The Duty To Stop Others reads "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995)*. It is undisputed that Defendant Reale had actual knowledge that Defendant Cameron was preparing to tase James Sizer Sr.. Reale knew the resistance from Sizer was minimal, if any, and nothing above 'passive resistance'. **Exhibit 5, pg. 101, line 5.** Reale admits awareness of **Exhibit 26**, COA 2491 ,2494 as well as **Exhibit 27**, **APD Training Material, COA 2809, 2814.** Reale did not take any actions to protect Plaintiff and admits that he believed everything done by Defendant Cameron was reasonable, proper and that she followed protocol and APD training in her tasing Plaintiff. **Exhibit 5**, Reale Dep. P. 90-97. Reale, himself was carrying a taser and had actual knowledge that neither he nor Cameron were certified or qualified to possess, use or discharge their tasers. Reale violated his duty and obligations to protect Plaintiff. Reale also violated his duties to supervise, train and discipline Cameron, as her supervising officer.

13. Defendants City of Austin and Reale failed to properly train, supervise and discipline Cameron and it's other officers. Additionally, Defendant City of Austin and Reale failed and refused to require officers to comply with and follow established APD polices, practices and procedures. Defendants admit in **Exhibit 28**, **Defendant's First Amended Answer**, **Case Document 27**, Paragraph 1, page 2 as follows:

**"Defendants admit the allegations in Sentences 1-6, but deny the remaining allegations in Paragraph 10 of Plaintiffs' First Amended Complaint."**

The first six (6) sentences of Paragraph 10, listed on page 7, **Exhibit 29**, **Plaintiffs' First Amended Complaint and Jury Demand (Case Document No. 25)** are agreed to by all parties and state the

following:

10. Sentence 1. Defendants had actual knowledge that tasing Plaintiff as he stood on the slanting concrete pavement would certainly result in collateral injury to Plaintiff.

Sentence 2. Both Defendants had knowledge and belief that Plaintiff was under the influence of alcohol.

Sentence 3. At the time Defendant Cameron used her taser on Plaintiff, she was not certified or qualified to possess or discharge a taser.

Sentence 4. Cameron had failed and refused to be certified since 2008 and knew that taser users were required by taser requirement rules and APD policy to be re certified annually.

Sentence 5. Defendant Reale was also in possession of a taser and had actual knowledge that he was not re certified to use or possess a taser at this time in that he has not be re certified in approximately five years.

Sentence 6. Defendant Reale was Cameron's supervising officer and intentionally allowed Cameron and himself to patrol and use tasers at times when he know that both were not properly certified to carry and use tasers and should not have been in possession of their tasers.

Defendants' stated admissions demonstrate a policy and practice of continually ignoring and violating APD's written policies relating to taser users, training and use of APD equipment. Possessing and using tasers when not qualified shows gross negligence and a deliberate indifference to the risks and dangers caused to individuals having contact with these two officers. The City of Austin and the two named Defendants consciously refused to take and complete the minimum training programs required to possess and use tasers. Defendants acknowledge (1) that the municipality's training procedures were inadequate and not being complied with where they were

adequate, (2) that the municipality was deliberately indifferent in adopting its training policy and not having it enforced, and (3) that the inadequate training procedures directly caused the violations of Plaintiffs' civil rights. *Zarnow. V. City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010)*. Clearly having actual knowledge and allowing Defendants Cameron and Reale to possess tasers when "not certified or qualified to possess or discharge a taser" for years shows a conscious indifference. Clearly Defendant Reale, as Cameron's supervising officer, knew and continuously allowed Cameron and possible other street patrol officers under his control, to intentionally violate written policies and to dictate policies by their actions. Policy 206.2.4, **Exhibit 20**, reads "Only employees trained and certified in the use of a specified control device are authorized to carry and/or use that device." COA 0514 Defendants admit that Reale discussed daily actions each morning at show up and he described the activities of Cameron and himself on March 6, 2015 which allowed other officers to hear about and subsequently follow the tasing practices and procedures utilized by both Defendant officers. Had Defendant Cameron not been issued and allowed to carry and discharge her taser, the tasing of Plaintiff would not have occurred. Had Cameron had recent, up to date, taser training, she would have known that Policy 206.4.1. (d) (COA 0515), **Exhibit 20**, prohibits using a taser on a person who shows passive resistance. An "authorized" police officer would have realized and known that Sizer didn't meet any of the justifications for applying a taser device listed in **Exhibit 21**, Policy 208.4.1 (a) through (d) (COA 0519). The City of Austin's decisions regarding providing tasers to both named Defendants without properly training these two officers, reflects "deliberate indifference to the risk that the violation of a particular constitutional or statutory right will follow the decision" *Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir. 2010)*. The City of Austin and Defendant Reale are liable for Cameron's actions based, in part, on their failure to

supervise, properly train and to compel compliance with written policies . The evidence shows that "(1) the supervisors and City of Austin failed to supervise or train Cameron and Reale properly in the use and proper taser procedures; (2) a link exists between the failure to train and supervise and the using of the taser to injury and cause the death of Plaintiff when neither Defendant officer was properly trained or qualified to possess, use and discharge the taser or understood its rules and policies; (3) the failures admitted to and shown in this case amounts to deliberate indifference." *Goodman v. Harris Cty., 571 F.3d 388, 395 (5th Cir. 2009)* The admissions of the Defendants acknowledge that a minimum of five and up to seven years have passed without these two officers being "certified or qualified to possess or discharge a taser" and all the Defendants had actual knowledge that both were "patrolling and using tasers at times when both should not have been in possession of their tasers. In this case, (1) the officially practiced policy of patrolling with tasers while not qualified became the official policy, (2) promulgated by the municipal policymakers, (3) was the moving force behind the violation of Sizer's constitutional rights. *Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009)*. Official policy in this case is found in the form of a widespread practice that is obviously so common and well settled as to constitute custom that fairly represents municipal policy. Chief Manley admits in his deposition, **Exhibit 23,** p. 11, lines 21-25, that neither Defendant officer was disciplined or required to take any training or take any actions because of their involvement with Plaintiff. He also stated his belief that "Officer Cameron was compliant with APD policy in her actions on March 6th, 2015 and her use of the taser was reasonable p. 12, line 8, p. 12 lines 13-18. After stating that Cameron followed APD policies and protocol, Chief Manley agreed that **Exhibit 28**, **APD DRRM Training Materials**, COA 2951, 2952 and 2955, among others, dictated the actions that 'the officers are trained to use '. He agrees that

17

"appropriate responses include using a firm grip, control holds, and pressure points to obtain compliance". He also agreed that Cameron was the officer on scene most qualified to determine the resistance level and she rated Sizer's resistance as "Passive Resistance". **Exhibit** 23, Manley Depo p. 21-27.

14. Taser International, Inc., the manufacturer of APD's taser devices discusses the risks associated with using the taser and stresses to officers "The most common risk is the secondary injury from a fall. Subjects will frequently fall immediately to the ground, and since the major muscles are locked, they will not be able to break the fall. Officers should consider the environment as part of their decision making process. **Exhibit 31**, Lexipol Policy 208 Taser Guidelines, COA 5033.

15. Plaintiffs' excessive force, policy, training and procedures expert, George L Kirkham, states his opinions acknowledging the Defendant officers actions as they confronted Plaintiff Sizer was a proximate cause of Plaintiff's fatal injuries. His report acknowledged that Plaintiff was not threatening or exhibiting any aggressive behavior and should not have been tased. His report indicated that had the officers been properly trained in the use of tasers, they would have "considered the risk of deploying a taser on individuals who may suffer "collateral injury' from falls. Kirkham stated "It is my considered professional opinion that the failure of the Austin Police Department to promptly take indicated remedial actions in the form of appropriate discipline, retraining and policy changes in the aftermath of numerous serious incidents involving excessive force has had the foreseeable effect of creating an informal, defacto set of policies within the agency which effectively which effectively nullifies official regulations and paves the way for similar acts of misconduct in the future. **Exhibit 32**, **George Kirkham's Expert Report**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray this Court consider the evidence and laws relating to this case. Plaintiffs pray this Court enter its Order agreeing that Defendant Cameron used excessive force by her tasing Sizer Sr. and using unnecessary force was a proximate cause of his injuries and death. Plaintiffs pray this Court also conclude that Defendant Reale failed to supervise and control Cameron and intentionally allowed and encouraged her to use excessive force on Sizer. Plaintiff also asks this Court to conclude the City Defendants were consciously indifferent to the matters listed in this motion, which include Defendant Officers' training, discipline, compliance with policies, practices and procedures. Defendants intentionally and consciously allowed Defendant Officers to use, possess, discharge and cause injury and death by means of tasers when they were not qualified to possess such items. Plaintiffs ask this Court to grant Plaintiffs' Motion For Summary Judgment as requested in all ways.

Respectfully,

Law Office of Bobby R. Taylor P.C.
1709 E. Martin L. King Jr. Blvd.
Austin, Texas, 78702
512 476-4886
512 476-2818
BY:/s/Bobby Taylor
State Bar No. 19685500
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Bobby R. Taylor certify that a true and correct of this Motion For Summary Judgment was delivered to Attorney Chris Edwards, Defendants' counsel, by means of the U.S. District Clerk's filing system on this 10th day of February 2017

/s/Bobby Taylor
Bobby R. Taylor

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES SIZER, SR., Deceased, by and through heirs DOROTHY SIZER, CAROLINE WOLFF, and JAMES SIZER JR., Individually<br>Plaintiffs,<br><br>vs.<br><br>OFFICERS MARTHA CAMERON and S. REALE, Individually and CITY OF AUSTIN, TEXAS,<br><br>Defendants. | §§§§§§§§§§§§§§ | CIVIL ACTION NO. A-15-CA-01143 SS |

**ORDER**

WHEREAS, COMES Plaintiffs' Motion For Summary Judgment Against Defendants Cameron, Reale and City of Austin and after considering the motion, response and record in this case and after consideration of all matters, Plaintiffs' Motion For Summary Judgment is meritorious and should be GRANTED.

THEREFORE, Plaintiffs' Motion For Summary Judgment is GRANTED and Judgment be Granted in favor of Plaintiffs and against all three Defendants

SIGNED this the _____ day of _____, 2017.

_____
UNITED STATES DISTRICT JUDGE